U S Fire Ins v. Langly Sr 






MODIFIED AND AFFIRMED 12 JULY 1990

NO. 10-89-175-CV
Trial Court
# 5859
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

UNITED STATES FIRE INSURANCE COMPANY,
Â Â Â Appellant
v.

DAVID W. LANGLEY, SR.,
Â Â Â Appellee

* * * * * * * * * * * * *

 From 12th Judicial District Court
Madison County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
This is an appeal by defendant insurance company from a
judgment for plaintiff Langley awarding him total and permanent
disability benefits in a worker's compensation case.
Plaintiff was an employee of L & L Drilling and alleged he was
injured while in the course of his employment for L & L Drilling on
or about June 20, 1987.
Defendant insurance company contended that plaintiff did not
sustain injuries in the course of his employment, that his
disability was partial rather than total, and for a limited and
short period of time.
The jury found (1) defendant was injured in the course of his
employment; (2) that the injury was a producing cause of total
incapacity; (3A) that the beginning date of total incapacity was
June 20, 1987; and (3B) that the duration of such total incapacity
was "permanent".
The trial court rendered judgment on such verdict (after
giving defendant a credit of $14,112 for benefits received) for
$63,371; and further "decreed the defendant shall pay all
outstanding unpaid doctor, hospital, therapy and drug bills
provided same were incurred because of plaintiff's on-the-job
injury made the basis of this suit and provided same were usual,
reasonable and customary. Further it is ordered, adjudged and
decreed that defendant shall pay all future charges which are
usual, necessary and customary for medical care, hospital care and
for drug or pharmaceutical bills for plaintiff's lifetime".
Defendant appeals on 10 points:
Point 1 asserts: "The trial court erred in allowing
[plaintiff's] counsel to examine [defendant's] representative
concerning the contents of the E-1 because such practice is
prohibited by Article 8309, Section 5, V.A.C.S.".
Point 2 asserts: "The trial court erred in allowing
[plaintiff's] counsel to examine the [defendant's] representative
from a document not admitted into evidence".
Point 3 asserts: "The trial court erred in compelling
[defendant's] counsel to remove the E-1 from his file and give it
to the [plaintiff's] counsel because such action deprived [the
defendant] of its property without due process of law".
Point 4 asserts: "The trial court erred in compelling
[defendant's] counsel to give the E-1 to [plaintiff's] counsel
because such action created unfair prejudice".
Point 5 asserts: "The trial court erred by refusing to admit
the E-1 into evidence in violation of the rule of optional
completeness".
Points 1 through 5 all are phases of one basic complaint,
i.e., the manner in which the Employer's First Report of Injury
[the E-1] was dealt with by the trial court.
Johnny Frazier, the driller and boss of the rig on which
plaintiff claimed to have been injured, testified on deposition he
was not aware plaintiff was injured on the June 19th-20th shift
until the following day; that plaintiff did not report the injury
to him until he came to work the next day when plaintiff told him
he had hurt his back, gave him no details, and then went home; that
he (Frazier) made out an accident report on a L & L Company form
about three days after the accident supposedly happened.
Thereafter, Ms. Greenwood, an adjuster for defendant, was
called by plaintiff as an adverse witness and was asked the
whereabouts of the report made by Mr. Frazier, the driller. She
replied, "I'm sure it is in the claim file." Counsel for plaintiff
asked to see the report, counsel for defendant objected, which
objection was overruled. Counsel for defendant went to his car to
get the report made by driller Frazier but instead produced the
Employers First Report of Injury [E-1] filed by L & L before the
Industrial Accident Board. Counsel for defendant then gave the E-1
to plaintiff's counsel and objected to the introduction of such E-1
into evidence. Plaintiff's counsel said, "I don't intend to
introduce it into evidence." Defendant's objection was not ruled
on by the trial court but the E-1 was not admitted into evidence. 
Ms. Greenwood was then asked by counsel for plaintiff about the
"driller's report". Ms. Greenwood said the report she had was the
first report of injury, or E-1. Counsel for defendant made no
objection. At this point counsel for defendant asked that the E-1
be marked and shown to the jury. No ruling was obtained on such
request by defendant. Counsel for plaintiff then (speaking of the
E-1) asked Ms. Greenwood:
Q.The driller says my name is Johnny Frazier, the
foreman of David Langley. However, I can't say I
witnessed the accident. Does it say that?
A.It does say that.
Q.Says how it did happen. Says I don't know how
employee was injured. There were only three
connections made on his last day of employment. 
Would you agree with me that it says that?
AYes sir.
No objection was made by defendant to the foregoing, and thus has
waived any objection to same. Rule of Appellate Procedure 52(a).
Moreover, the foregoing fails to demonstrate any harm to
defendant. We are of the opinion that the asserted errors
complained of in points 1 through 5 did not amount to such a denial
of the rights of the defendant as was reasonably calculated to
cause and probably did cause the rendition of an improper judgment
in this case, nor did such probably prevent the defendant from
making a proper presentation of the case in this court. Rule of
Appellate Procedure 81(b)(1). 
The trial court did not compel defendant to give plaintiff a
copy of the E-1. Plaintiff requested and the trial court required
defendant to give plaintiff a copy of the driller's report made by
Mr. Frazier and, rather than furnish the driller's report,
defendant provided the E-1.
Introduction of the E-1 into evidence as requested by
defendant is made inadmissible by Article 8309, Section 5,
V.A.T.S.; Texas Employers Ins. Assn v. Henson, CA (Beaumont) NWH,
569 S.W.2d 516.
Points 1 through 5 are without merit and are overruled.
Point 6 asserts: "The trial court erred in entering the
judgment that it did because the award of future medical costs and
expenses is expressly prohibited by Article 8307, Section 5,
V.A.T.S.".
Point 7 asserts: "The trial court erred in entering the
judgment that it did because that judgment allows [plaintiff] to
recover medical costs and expenses not related to the injury made
the basis of this suit.
Points 6 and 7 involve that portion of the judgment which
awards future medical to plaintiff. The judgment as to future
medical provides: 
. . . further ordered, adjudged and decreed that
defendant pay all future charges which are usual,
necessary and customary for medical care, hospital care
and for drug or pharmaceutical bills for plaintiff's
lifetime."
Point 6 asserted the court erred in awarding same because they are
prohibited by Article 8307, Section 5. The Texas Administrative
Code governs this situation. Section 42.15 of the Administrative
Code provides: "Accrual of Medical Benefits. The right to medical
benefits for a compensable injury accrues as of the date of the
injury and continues for the life of the injured worker, until
terminated by agreement between the injured worker and carrier, and
is limited in amount only according to the reasonableness of the
expense and the necessity of the treatment."
Point 7 asserts the judgment would award future medical
treatment for conditions not related to the injury made the basis
of this suit.
That portion of the judgment above quoted and related to
future medical is modified by adding thereto: "provided such
future medical charges are for medical care related to or caused by
plaintiff's injury of June 20, 1987."
Point 6 is overruled and point 7 is granted to the extent that
the judgment is modified as noted.
Point 8 asserts: "The trial court erred in entering the
judgment that it did because the judgment is not definite or
certain".
Point 9 asserts: "The trial court erred in entering the
judgment that it did because it purports to award relief not
supported by the jury verdict".
Point 10 asserts: "The trial court erred in entering the
judgment that it did because it is based in part on unspecified
findings of fact on the part of the trial court".
Points 8, 9 and 10 relate to that portion of the judgment
which provides:
. . . It is further ordered, adjudged and decreed that
the defendant shall pay all outstanding unpaid doctor,
hospital, therapy and drug bills provided same were
incurred because of plaintiff's on-the-job injury made
the basis of this suit and provided same were usual,
reasonable and necessary."
Plaintiff did not ask for, and the trial court did not submit,
a jury issue on the past medical expenses related to this case. 
The amount of past medical cannot be determined from the judgment
herein and a final judgment must be definite and certain and must
dispose of all the issues involved so that no further action by the
court is necessary to determine the controversy. Roberts v.
Brittain, CCA (Tyler) NWH, 659 S.W.2d 750; Jones v. Liberty Mutual
Ins. Co., CCA (El Paso), 733 S.W.2d 249.
Points 8, 9 and 10 are sustained. This requires that the
judgment be further modified by deleting therefrom the above quoted
portion of the judgment.
As modified under points 7, 8, 9 and 10, the judgment of the
trial court is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â FRANK G. McDONALD
DO NOT PUBLISHChief Justice (Retired)

[Participating: Chief Justice Thomas, Justices Hall and Means, and
Chief Justice Frank G. McDonald (Retired)]



lign:justify'>Â 

A.  All my life.

Â 

The StateÂs position is that, because HicksÂs
application requested a personal recognizance bond or, alternatively, a bail
reduction, the trial court did not abuse its discretion in reducing bail. Â Given
HicksÂs subsequent testimony on his inability to post bond, the mandatory
nature of article 17.151, and the applicable case law, we reject this part of
the StateÂs argument.Â  See Avila, 201 S.W.3d at 827 n.1.

The State also posits that the trial court could
have disbelieved HicksÂs testimony that he could not make bail in any amount.Â 
But the only evidence before the trial court was the above-quoted testimony,
which the State failed to subject to cross-examination.

Accordingly, we hold that the trial court abused its discretion in
not following Rowe's dictates that it must set bail at an amount that
the record reflects Hicks can make or release him on a personal
recognizance bond.Â  Id. at 826.Â  The record shows that Hicks could not
post bond in any amount; accordingly, the trial court should have released him
on a personal recognizance bond. Â See Rowe, 853 S.W.2d at 582; Ex
parte Kernahan, 657 S.W.2d 433, 434-35 (Tex. Crim. App. 1983); Avila, 201 S.W.3d at 826-27; McNeil, 772
S.W.2d at 490.Â  We sustain HicksÂs sole issue.

We reverse the trial courtÂs order setting bail at $6,000 and $2,500, respectively, and remand the cause to the trial court with instructions to
release Hicks on a personal recognizance bond.

Â 

Â 

BILL VANCE

Justice

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray dissenting)

Reversed
and remanded with instructions 

Opinion
delivered and filed June 18, 2008

Publish

[CR25]
(Chief Justice Gray dissents with a note)*

Â 

*(For
four reasons I dissent.

Â 

First,
the record in this appeal does not contain the required certification of the
defendantÂs right to appeal.Â  Tex. R. App. Pro. 25.2(d).Â  ÂThe appeal must be
dismissed if a certification that shows the defendant has the right of appeal
has not been made part of the record under these rules.Â Id.Â  On this
record we should dismiss this appeal.

Â 

Second,
the appellant failed to meet the burden of proof required to obtain release on
personal recognizance bond.Â  The defendant proved that he could not obtain a
bond.Â  Based upon the record, it does not surprise me that he cannot obtain a
bond.Â  If I was a bondsman, and based on this record, I would not post a bail
bond for Mr. Hicks.Â  The risk is too great.Â  Hicks did not, however, establish
what about he could pay for bail.Â  That is the proof required.

Â 

Third,
as an appellate court we should not set the amount of bail nor require that
Hicks be released on a personal recognizance bond.Â  Assuming that the defendant
had proved the inability to pay any amount of bail at all, the Court should, at
most, remand for further proceedings consistent with the CourtÂs opinion.Â  The
situation may have changed in the 60 days since the hearing on the prior
petition for Writ of Habeas Corpus.Â  See ExParte Davis, 147 S.W.3d 546, 554 n.1
(Tex. App.ÂWaco 2004, no pet.)(Chief Justice Gray dissenting).

Â 

Forth
and finally, I also note that Hicks did get some relief, a reduction in the
amount of bail required to obtain a pretrial release.Â  He prayed for release on
a personal recognizance bond or Âgiven bail in an amount that can be posted.ÂÂ 
As noted above, he failed to prove the amount of bail he could post, even if he
proved that he could not obtain a bail bond in any amount.Â  Thus, I cannot say
that the trial court, on this record, abused its discretion in the amounts it
set for bail on each count.Â  Further, when the Court discusses the StateÂs
arguments that the trial court could have disbelieved Mr. HicksÂs testimony,
the Court states that the State ÂfailedÂ to subject Mr. Hicks to
cross-examination.Â  The State had no duty to cross-examine Mr. Hicks.Â  Mr.
Hicks had the burden to prove the facts necessary to obtain relief.Â  I belief
he failed to sustain his burden of proof.

Â 

For
these reasons, I respectfully dissent.)













Â